This is our second case of the afternoon, Carole Kaiser-Long v. Kirk Owens, for the appellant, Ms. Wakeman, and for the appellee, Mr. Elwood, you may proceed. Good afternoon. May it please the Court, Counsel. I'm here today representing Carole Kaiser-Long following a jury trial that occurred in Champaign County back in March of 2014. Carole Kaiser-Long and I are asking the Court today to reverse the trial court's decision of a directed finding with respect to Ms. Kaiser-Long's lost earnings claim, lost earnings potential claim, and remand it back to the Champaign County trial court. The basis of the request for remand is because of the standard of directed verdict, the directed finding was not according to the PEDRC standard, and secondly because the trial court relied upon Sessanoff and some other cases, particularly the Sessanoff case, for a philosophy or a principle that the Illinois law does not allow for the recovery of damages if the damages or lost earnings are incurred essentially by a C-corporation, which is not what the Illinois law provides. So based upon those two reasons, we ask for a remand. I'd like to first touch upon the issue of jurisdiction because defense counsel's brief suggested that the court does not have jurisdiction because of an improperly filed motion to reconsider. I'd like to point out that the Keene case makes it clear that the motion to reconsider was not a prerequisite to get to the appellate court. It was simply a hopeful pact of least resistance to rectify the situation. But in any event, the motion to reconsider asked the judge to reconsider the directed verdict that was entered, the directed verdict taking the issue of lost earnings away from the jury. By doing the motion to reconsider, we were essentially asking the judge to get it back to the jury and have the jury make the determination. So I believe that the court does have jurisdiction and that argument fails. The first point is with respect to the directed verdict standard not being met. As you're well aware, the evidence would have to be viewed like most favorable to the opponent such that no contrary verdict would stand. That is absolutely not the case in this case. For the four days of trial, Carol Kaiser-Long presented evidence and testimony that she was significantly injured as a result of a car accident that occurred in August of 2008. At the time of the accident, she was in Champaign-Urbana doing some work as an alum at the University of Illinois, which she's very involved with, and she's frequently in Champaign for those purposes. At that time, she was hit by Mr. Owens, who was driving under the influence of alcohol at a high rate of speed. She fractured her sternum, and the injury that was most clear was the fractured sternum and a lot of pain and suffering that went along with that fractured sternum. That fractured sternum resulted in her being unable to continue with the work that she had done for her entire life of working in the cattle business, where she would breed cattle. She described in great detail during the course of the trial what that required, that she had to jump down into pits to look at the cattle and climb back out over these railings, and that she was physically incapable of doing that because of the pain she was experiencing as a result of the fractured sternum. She also sustained a very significant issue with anxiety, particularly anxiety while driving as a result of the car accident. As a result of that anxiety, she was significantly limited in her ability to drive at night. She testified to that, as did some other family members and her former business partner. As a result of her being unable to drive at night, she was unable to do the cattle purchasing, which is supposed to be happening at the prime time of dusk. So she was, it was uncontroverted testimony that she was not able to do this activity that she had been doing all of her life, and that as a result of her inability to do that work, she lost earnings as a result of that. Now, during the course of Carol Kaiser Long's enterprise in the cattle business, she put the profits that she made from that business into a C-corporation called C-Bar Corporation. Why wasn't it an S-corporation? I don't know why it wasn't an S-corp, but it was a C-corp, and I just don't think there's any case law or merit to the idea that checking an S or a C makes any difference in the fundamental underlying Illinois principle and public policy that a plaintiff is allowed to recover for any of the injuries sustained that are naturally flowing from a car accident or from another tort. Was the plaintiff, let me back off, the corporation wasn't a party in this litigation, was it? It was not, because it could not be, because of the, I will probably pronounce this incorrectly, but it's the Zawetsky case that's discussed in my brief. In that case, it was Zawetsky v. Checker Cab. The court said that you could not have a separate corporate entity as a plaintiff because you're not a foreseeable plaintiff. Mr. Owens driving down the road and hitting Carol Kaiser Long would not reasonably foresee that there could be some corporate entity that could also sue him. So based upon that, it's... Well, in any event, the reason I ask it is there's no, on this record, there was no risk of a double recovery. Right. So there was no corporation that could have stepped in and said, in addition to Carol Kaiser Long, this corporate entity has been injured and we want some damages paid for our injury. Right. In fact, that claim would be specifically, very clearly precluded under Illinois law based upon that federal case. And specifically in this litigation, there's no such indication and there's no argument for that? That's correct. Go ahead. The testimony that was presented throughout the course of the trial was that Carol Kaiser Long sold cattle and from about 2000 until 2008, had between 2,700 head of cattle up to 5,000 head of cattle. At a time. At a time. And she would rotate that stock of cattle and make money and she would change the timing of when she would go, you know, put the cattle in and out of the market based upon what the cattle pricing was at that particular time. So it was a revolving door. And she also testified that it's very important with that revolving door to always be in the market. Like once you're out, it's difficult to get back in. So once she was out, it wasn't easy for her just to say, okay, now I'm going to do this again. But we also know that during the time of the injury following the Saxon, she did still have some head of cattle. I think she had none for one year, but then she had 100 or 200 head, but nothing like the 2,000 to 5,000 head that she had historically. So any argument that her damages are speculative is incorrect because we know exactly what profit she made on the head of cattle that she had. What was the argument the defense made at the trial level on why the motion for a directed verdict on this issue should be granted? Based upon the Sazonoff case. Based upon the what? The Sazonoff case. I would submit that the Sazonoff case supports my position much more clearly than it supports the defense position. In the Sazonoff case, there was an individual who was seeking lost earnings for a corporate entity. The entity was opening a pet store and the pet store was delayed by 43 days. The trial court granted the defense summary judgment in that case and said that those earnings were not compensable because it was a corporate entity. However, the appellate court reversed that and said the summary judgment was not appropriate. The appellate court in that case essentially said, as a matter of law, you can't preclude those damages, which is exactly what my position is, and that this has to go further to a trial and to a jury. That's exactly what my position is in this case. Subsequently, other cases out of the state of Illinois, and notably no court in the state of Illinois that I can find, has found something inconsistent with Sazonoff or has relied upon Sazonoff either. I think this is an opportunity for making new law on this issue of the recovery of lost earnings. But other states have relied upon Sazonoff to reach the right conclusion, which is that if a plaintiff is so aligned with the corporate structure that it is their alter ego, it is them, that you can't deny their recovery of the damages that they sustained that were naturally flowing from an accident or from an event. The Barron's case in New York had an opera singer, and the opera singer had an escort, but she was the sole shareholder, she was the sole employee, and she was unable to perform. And so she lost earnings through that corporate entity for her own personal performance. That's exactly what the case is in the present case. So, Counselor, you're saying we need to be looking at the nature of her activity, the fact that it was her management and her personal activity involved in earning this money. Correct. It's irrelevant what type of corporation we're dealing with. Which checkbox is checked should not be relevant. What should matter is the level of engagement and the level of personal effort that's involved. It would be a very different thing if Carol Kaiser-Long was claiming she lost earnings in some company like Bank of America with a lot of other shareholders and a lot of other employees, and it's hard to discern what work resulted and what profit and what number and who was going to be able to take this money out. This was solely Carol Kaiser-Long. CBAR was Carol Kaiser-Long. She's the sole shareholder, she's the sole employee, she's the only person who did any of the work that put any money into the CBAR corporate books. And all of the retained earnings are due to Carol Kaiser-Long's efforts, 100 percent, without any distinction or qualification. Did the jury return the verdict for your client? Yes. How much? $47,000 for the compensatory and then $100,000 for a punitive damage claim. For punitive damages? Yes. And is your contention before us that the jury should have been given an opportunity to consider as well lost earning capacity? Absolutely. As an element of damages? Correct. Had the jury been permitted to do that, had this motion been denied, what would you have argued to the jury? I would have argued lost earnings of $800,000 consistent with the testimony. So it's your position that you had presented evidence to support a claim of that amount? Yes. Of course, we don't know what the jury would have done. Right. But that would have been your contention. It certainly should have gone to the jury for them to make that determination. It should not have been made at the directed verdict level. You made reference earlier to her breeding cattle. She didn't breed cattle, did she? She bought young cattle at market and gave them to somebody at a feeder lot to fatten them up. She fed them, yes. Well, she wasn't feeding them. Somebody else was. With her direction. Right. But I mean the feeder lot, that's their own business. Right. So I misspoke. You're right. She did the cattle feeding, not the breeding. When they got fattened up and the market was right, she sold them. Exactly. So. Exactly. But this is where her personal effort and skill came into play because she chose which feeder lots to go to. She chose the feeder lots that were going to produce the most productive, most profitable cattle. This was all about her efforts and those feeder lots were paid by her. They were not employees of that corporation. She still was the only employee of the corporate entity. The testimony was uncontradicted and that her accountant testified that she always made profit of a minimum of $50 ahead in the bad years and up to $100 or more in the good years and that the years that she was out of the market were particularly good. So she would have made like $150. And we know she made $150 ahead because she did make $150 ahead and some of the cattle that she did actually still have. So it's not speculation. We know she did it. The court did not discuss anything about speculation in rendering the decision to direct the verdict and base it solely upon Cessna and the distinction between an S corp and a C corp. What did the court say in explaining its decision? That the Cessna case, the judge specifically relied upon the one sentence in that Cessna case, that it had to be earnings that they would personally have received from the corporation. And because she didn't receive a salary per se, that she wasn't receiving earnings from the corporation. And because it was a C corporation, she was receiving tax benefits, so she couldn't then claim to have a claim to the money that was held by the corporation. But that's a fallacy. This is essentially a choice like if I decide to put my money into a CD or into a particular stock or into a checking account or into a corporation to let the retained earnings grow. She made a decision as to which financial vehicle to use, but the money was still hers. No one else had a right or a claim to those retained earnings other than Carol Kizer Long. One of the comments in the defense brief was that she wasn't guaranteed to get that money. Well, first of all, that's not the standard. That's not the requirement for having a loss to earnings claim. You don't have to be guaranteed of having the money. It's a different standard. But also, that would be like saying if I put my money into a mutual fund and I lose my money, that it's no longer a loss to me. She chose a financial vehicle to rest her money, essentially, until she was going to take that money out. Her accountant testified. This was like her 401K. Her accountant testified that this was solely her money, that no one else had access to the money. It was all hers, and that's how she was building her retirement fund. There was nothing to contradict that presented in the record. The trial court was required to follow the 7-off case, and the language you cited is actually in the case. So I guess it's hard to be too critical of the trial court, isn't it? I mean, wasn't the court that decision was out there? I'm actually not being critical of the trial court. I just think that there's a different decision that's the right decision. However, we're not, so we can decide whether that makes good sense and is a good policy. That line from the 7-off case was, I think, could be arguably dicta, because it's inconsistent with the ultimate decision in the 7-off case. The ultimate decision in the 7-off case was that this is not a claim of injury or damage that's dismissed as a matter of law. The summary judgment was not appropriate, and it had to be remanded back to the trial court, which is exactly what my position is in this case. So I think that the judge is reading that one particular line that's a reasonable line for him to read, and it's in the case, but that's not the holding of the case. That's not the result of the case. And the practical reality of it, that is the law in Illinois, which it's not been stated so far in any law in Illinois that a C corporation's earnings cannot be recovered in a personal injury case. And if a person is injured in a case and she, this is the most significant part of her claim. She was really injured. Her life was altered significantly. We had four days of testimony about this. Not only was her life altered, but she lost a huge amount of money because she wasn't able to do what she had always done. So to just decide now that the law is going to be different, and she's going to be precluded from recovering those damages that naturally flowed from, solely flowed from this car accident, is not consistent with Illinois public policy or philosophy or law regarding what damages a plaintiff can be expected to recover. The other case that I was, that's followed Sazonoff is the BOVA case, which is an Indiana case. And in the BOVA case, the BOVA court in Indiana also said that the Sazonoff case stands for the proposition that if the, if the individual who's been injured and the corporate entity are essentially one and the same, then you have to allow the recovery to happen. You have to allow the compensation. So BOVA also reaches the same conclusion that I submit the Sazonoff case stands for, which is if there is a, an alignment of the entity, so it's not a question of which individual contributed which capital or who did what within the corporate entity, which I do think complicates and muddies the waters. But if it's a single shareholder, single employee, and all of the money that's going into that corporation are because of her personal efforts, and those personal efforts were thwarted because of these injuries, then she should not be precluded from getting that recovery. Would she have been eligible had she chosen to do it, to be a subchapter S corporation? I don't know. I don't know what the reasoning was for the corporate designation and I would submit that which box is checked in that regard. It only relates to what the taxes are. Well, I understand, but I'm just curious, leaving aside from the choice, assuming it was a choice, would she have been eligible? I'm hardly a tax expert. It's not a rhetorical question. I don't know, but her accountant testified, and her accountant testified that he set this up and that this was what he had recommended to her for how to proceed. Okay. And that it was a 401K essentially for her retirement. Counsel, does it matter that in Cessna we were talking about a claim for lost earnings versus here we're talking about lost earning capacity? I don't think it makes a difference because it still is, there's both with Carol Kaiser-Long. She lost earnings and she lost earning capacity or potential. She lost both. I see no other questions. Thank you. We'll hear from you on rebuttal. Thank you. Brad Elwood on behalf of Kirk Ellings. I want to talk about the jurisdictional issue just for a few minutes. We're certainly aware of the Keene case. I don't think this is a classic scenario where Keene would apply and allow this court to consider the appeal that's before it. I think there's a couple of jurisdictional questions that are raised by the Senate, and indeed there are a couple of murky areas. First of all, we have a situation where we have a jury trial and we have a motion to reconsider a directed verdict entered during the course of the trial. We don't have a classic post-trial motion that requests a new trial. If you think about what she's asking in this case, she's asking that the directed verdict be reversed, but it's implicit that the case be sent back for a new trial on this one element of damages. So she's really asking for a new trial without asking for a new trial. And if we look at what the law sets forth in 1202 and 1202E, when you have a jury trial and you have a jury verdict, you have to file a post-trial motion and you have to request a new trial, and that hasn't been done. Now, Keene is a little different situation. We don't have a case where we have a summary judgment. We don't have a spent trial. We don't have a directed verdict entered on all the claims and the case disappears. We don't have a situation where the jury verdict was rendered and then on the defense post-trial motion, a J&OB was entered and the other side didn't file a post-trial motion, and the court is not obviously going to penalize them in that situation and say, well, you didn't file a post-trial motion. You were the prevailing party. What we've got here is a jury verdict on the issues of liability with respect to the punitive and the damages, and we have one element of the damages that they're saying was not given to the jury and not decided. And it's our position that, one, I should have filed a post-trial motion. I don't see how a motion to reconsider a directed verdict is an attack on the verdict of the case. And second, even if you find it to be a valid post-trial motion, how does it ask for a new trial? It doesn't. It's implicit, but it doesn't ask for a new trial, which violates 1202E. What would happen if the motion was granted? Pardon me?  The motion to reconsider the directed verdict. The motion to reconsider is granted. The judge says, you know, I was wrong. What would happen? They'd have to retry that issue on the issue of damages. They could retry. On the issue of damages. That's right. That's right. No, that's true. Well, why isn't that implicit? That's a great question, and when you look at the Berg case that we cited, it's a little different situation than we have here. Berg was a summary judgment that was entered, and they filed a motion to reconsider the entry of the summary judgment. And they also attached a motion for Lee to file an amended complaint. The motion was denied with respect to the summary judgment, and the court took under advisement the issue of whether I grant Lee to file the complaint. And that came at a later date, and after that denial, the plaintiff then filed a notice of appeal. And they said, no, that was not a timely notice of appeal. And what they did is they looked at that and they said, well, when you look at what was being asked for here, it's implicit that if the court would have granted Lee to amend, that would have reversed the ruling on the summary judgment. But they said, no, it has to be clear. And that's all we're asking for in this case, is that they specifically ask the court for the entry of the new trial, and they didn't do that. Now, that doesn't mean the court can't dispose of this case and affirm this case. We move on to the merits if you find that you do have jurisdiction. There's a couple of things I'd like to address on the directed verdict. First of all, I think the Cisnova case does apply here. What they said was you can't consider the corporate earnings, but you can consider what the corporation paid to the individual. And your question, Your Honor, about is this important about earnings, I think it is. The testimony is she had no wages from this company. Did she seek lost wages? She's seeking lost wages. I don't think that's correct, Counsel. She's seeking lost earning capacity. Lost earning capacity and potential earning capacity, yes. Is there a difference? I don't think terminology-wise, yes, I think so. What they're trying to do here, I don't think so. I think it's important, when you look at the makeup, I apologize, I've got a little bit of dry mouth going on here. But when you look at how she was compensated, retained earnings is all they can put their finger on. Retained earnings of a corporation, a C corporation, are that corporations? That's a separate entity. It's not the plaintiff. She may be the sole shareholder. Could she have elected to be an S corporation? I don't know. I assume so, but I don't know. I'd be guessing. Well, it looks like it under the circumstances. Had she elected to be an S corporation, would the argument you made to the trial court have any merit? I think it would be very difficult to make our argument, because the argument that we're making here is distinguishable on the S and the C corporations. So, in other words, if she had checked the other boxes, as Wakeman puts it, and was an S corporation instead of C corporation, you'd have no argument to the trial court on why her claim for lost earnings shouldn't be submitted to the jury, would you? I think it would be very difficult. I think you're right, because our argument here is in an S corporation, the income and losses of the company are passed through to the individual. Mr. Elwood, you're too modest when you say it would be very difficult. You don't want to be making bogus arguments to the trial judge. Right. That would be a bogus argument. I think we'd lose on that. I do. And that's why these cases are decided. Well, but here's, then stepping back for a moment, your client, not you, but your client committed a terrible tort in this case. This woman was injured badly. Your client was a drunk driver worthy of no sympathy. Why should it matter to him that there's an S corporation or a C corporation when it comes to recompense for the damage he's done? Because it's a matter of being able to prove damages that a plaintiff is entitled to. And regardless of what we might think of the defendant or the conduct of that, we have to look and ask, we have elements of damages the plaintiff must meet their burden on. And one of those is to show that they sustained an income loss or a loss of potential for earnings. Why does your client have an interest in which box she checked for her corporate structure? But it's not just a box. It's a decision on how to proceed with a corporation. Well, if you recall, the very first question I asked Ms. Wakeman, I believe, was is there some corporate party here? And there's not. And there's not. So that means the absence of a claim for lost earnings is a windfall for your client, isn't it? That is, assume that there is a legitimate claim for lost earnings that could be made and the jury might very well accept. But because of the difference between a Subchapter S and a Chapter C corporation, no one, no party is ever going to make that claim. And your client, however bad his conduct was, it's a windfall of a judgment that will never be made against him. Isn't that the case? I disagree. The problem with this case is I think the plaintiff is confusing the damages and losses of a corporation with the damages and losses of her individually. And this whole talk about retained earnings is wholly speculative. Well, that would be a good claim if the corporation was there and you're talking about there will be a double recovery for this. But there won't, will there? As a matter of fact, there will be no recovery for the loss of or the claim for lost earnings. That's true. But I point this out. Her and her husband were very sophisticated. And I think we didn't talk a lot about this in the briefs. But when you read over the record, they have a very complex setup with all their corporations and how they treat and the tax consequences. They made a special and deliberate decision on how to set up their companies and proceed forward and how she was going to be paid. Was she going to draw wages? Was she going to get dividends? Was she going to have bonuses? All those types of things. That's all very true. Why should it matter to your client? What's his interest? It allows her to have her cake and eat it too. It's what? It allows her to have her cake and eat it too. The way she's setting this case up. What is your client's interest in her affairs? Why does your client benefit from her choice? Why should your client benefit from her choice to be a subchapter, not to be a subchapter S but to be a chapter C? Why does he care? Why does it matter to him? He cares and it matters to him because it goes to how she proves and establishes a crucial element of her cases on that element on damages. And she still has that burden and that propriety. That element is there but it is never going to be recoverable. But that's not my client's fault either. Well, why should he benefit from it? Why does it matter to him? You know what this reminds me of? I remember I'm a trial judge. I'm airing a case 30 years ago in Cook County at 26th Street. There was a case where some guys jumped the fellow at the CHA in the south side and beat him up. It was a fairly simple mugging. But the problem was he died. And I remember the pathologist, because it was a bench trial, I'm listening carefully to the evidence and the pathologist said, these were just essentially facial injuries that wouldn't have caused anyone, a normal person, any harm. But in this case, he had a preexisting heart condition and it killed him. So the beating caused his death. I found these people guilty of murder. In a sense, why don't you take your victims where you find them? That is, the victim in this case was Ms. Wakeman's client, Carol Keisler-Long. Your client hurt her badly without any justification. He's a drunk driver. Why does it matter to your client that she's a Chapter C or a Subchapter S? It seems to me it should make no logical difference, and it's a windfall for your guy. She still, as a plaintiff, has to show that she was personally damaged and quantify it. And the loss that she testified to and the evidence that she put on here related to it. This is a secular argument. You're saying she has to do that because she has the wrong corporate structure for her income tax, by God, and therefore she gets nothing. And my question is, why should it matter to your guy? Why doesn't he take his victims as he finds them? Because in this case. And let the jury decide, gee, was she really injured or was it this corporation? I think they can figure that out. She has to be able to demonstrate, as in these other cases that have been cited, that she has a personal loss as a result of this that can be quantified. And the loss that she testified to was the company's, not hers. And the company isn't there and it's never going to be there and no one is ever going to be able to make this claim for $800,000, will they? No. The corporation isn't there. Because she checked the wrong box and therefore what? I don't know if I can simplify it that way. She checked the wrong box. Well, that goes back. She could, I think, I'm not a tax doctor, but I think she could be a subject to S-Corporation. And if she were, then by God, that $800,000 claim would be before the jury. Because she would have money from the company that would pass through from that S-Corporation to her personal income tax and she would get a benefit of the income and the losses from that. In the other cases that we follow. Assuming that's what it says, we don't have to follow it, do we? It's a decision of a sister district. So here's the question. And by the way, as I think you know, you do a very sound job of all this. I'm just raising questions and sounding them out. And I appreciate your advocacy, as always, Mr. Elwood. But this is a significant question. As a matter of policy, assuming Sessanoff required the decision that Judge Ford found in this case as argued to him, why as a matter of policy should we follow it? Why is it good policy? I think it's a sound policy when we look at the structure of these corporations. You still have to have an individual who has a measurable and demonstrative loss. It's not just about looking at the situation, as in this case. I'm not going to say that. It's not about just looking at the situation and saying that there were losses to the corporation. She has to have a personal stake in this. Well, by every standard, she's had a loss here. I mean, if you're sitting down and explaining this to Ann Tilley, who is a graduate of the School of Hard Knocks, never went to law school, but she'd understand that. This lady, she suffered. She's had a bad time here. Counsel, it sounds like you're arguing that there wasn't evidence presented to even submit this issue to the jury versus which box was checked. Is that what you're saying? Well, I think that's true. It was a directed verdict based on the fact that there was insufficient evidence to establish she had a personal loss, and it was the lack of evidence related to the fact that there was a C corporation involved as a non-party, and the testimony and the evidence that was presented related to the C corporation's losses and not the individual's losses, and she wasn't an S corporation where she could say, I have passed her money, I have passed her income. But what about her personal contribution? I mean, the testimony regarding the fact that she basically was the corporation. Well, that's true. But as we pointed out, I think the trial is almost a piercing the corporate veil argument that they're making about themselves. I mean, they hold themselves out for tax consequences as a corporation for whatever benefit that it serves. That's between them and the IRS. That's right, but then they come back to my client, and they want him to pay for lost earnings, potential lost earning capacity based on this fiction that they've created to give them a benefit in one area, and now when that comes back to bite them, now they complain, oh, look at me. I think there's some fairness in that as well. What if she had some weird insurance policy from Lloyd's of London that compensated her for the loss of the ability to jump down into the feed lot or jump down into the pens to see the cattle she was buying? A lot of companies do that. Would your client benefit from that? Well, in a situation like this where the corporation can't sue, that's how corporations protect themselves. If they've got key individuals, they take out insurance policies to protect them from lost income so they can weather the storm during those periods. They didn't do that here. Except that her key insurance policy are the retained earnings. Well, and the retained earnings in this case, I think, are a red herring. We don't know how long she would work. We don't know when those would be available. We don't know what the company or corporation would do. But it would be her money. Assuming there was money there. Yeah. Whatever money comes in to the C Corporation is hers. Right. No other person can touch it, and if they have a claim on it, it would be a claim they'd have to prove under some theory. Based on her structure now, yeah. What would happen if she died? I don't know the answer to that. It would be hers to dispose of. Her estate. It would go according to her estate plan. I don't know the answer to that. Well, I'd be a corporation. I don't know that if I'm a shareholder in a corporation that the shares would be part of my estate, and they would go according to my estate plan. That's true. No other person would have any control over that. It would be how I wrote my will. Right. Or if I didn't have a will, it would go under the laws of Illinois of intestacy. Right. So what's wrong with the alter ego argument? I am the C Corporation. But under Illinois law, C Corporation is a separate entity, and we only pierce it when we've got a shareholder operating as basically a partner in the S Corporation type environment. I'm not aware of any cases that would support that approach. So you can only use the corporate. Only a plaintiff can pierce the corporate veil of a defendant, but a plaintiff can't shed the corporate veil of their own. I've never seen a case that allows that. I'm not speaking authoritatively, but I've not seen a case at all. I'm not either. I'm picking out law. That would be our position. I just do want to reiterate, when you do look at the arguments that we made below and you do look at the distinctions, other courts seem to follow this distinction between an S and a C Corporation in the same manner as we're advocating to this court. And that's the BOVA court, the Barron's court, New York, Indiana. It's the same concept. If you draw a salary, you draw a direct income or direct benefits from that company, yes, you can get paid under the Cezanoff case. But if you're involved with an S Corporation, not only do you get money if you are paid a salary type situation, but you also will then get to treat that company as part of your income based on the fact that it passes through your taxes. I think the distinction is valid. I do think it comes down to a matter of whether they can prove their case based on who owns the right to the loss. And here the corporation owns that right to the loss. Thank you. Thank you. Rebuttal? The directed verdict was entered solely based upon that Cezanoff case and the distinction between S Corp and C Corp. It was not entered because of any insufficiency of evidence. In fact, the trial court heard four days of very detailed, very thorough evidence regarding what Carol Kaiser-Long's participation was in the cattle feeding business and what her profits were from that and what she lost. What Carol Kaiser-Long lost was her lost profits that were proven. Carol Kaiser-Long chose to put those into a C Corporation versus a money market fund or some other financial entity. That choice should not preclude her from being compensated like any other plaintiff is in the state of Illinois for the injuries naturally flowing from an accident, particularly an accident as egregious as this one. We are not confusing our damages. Carol Kaiser-Long is the person who was injured and Carol Kaiser-Long is the person who lost the opportunity to make more money and the opportunity to make the profit that we know she made because we know she made on the smaller amount of cattle. She lost that opportunity because of the negligence of Mr. Owens and the deliberate, willful choice he made to drink and drive. She made a deliberate, willful choice to pick, to check a C Corporation versus an S Corporation at the direction of her accountant. But her accountant testified that was her money, her retirement account. It's uncontroverted. She absolutely sustained her burden of proof with respect to that issue getting to the jury. And that's what we're asking. Well, we asked then and that's what we're asking now is that this should go to a jury for a jury to decide what damages Carol Kaiser-Long should be entitled to. Carol Kaiser-Long is the one who lost the profits and lost the ability to participate in that business. The idea about what the retained earnings are going to be would be like saying, okay, so she would have had this money or she had this money and she invested it and the stock failed and the company went bankrupt. For some of it, she invested it in IBM and it went bankrupt. So she doesn't die with it at the end of the day. That's not the standard. The standard is would she have had it other than this accident? And she would have. It doesn't matter what would have happened to it later. She could have invested more cattle down the road and it could have gone belly up. That's not the evidence that was presented in this case. That's not the facts in this case. That's not the standard. But it seems to be what's suggested that we don't know what's going to happen with the retained earnings at the time of her death. That's not what the court is supposed to be looking at. If your honors do not remand this, you're going to effectuate a change in Illinois law that is completely contrary to public policy and it's going to significantly limit the damages of someone who was badly injured and had a serious financial consequence as a result of that injury, but she's not able to recover it because of a technicality. That's not the public policy of this state and there's no case law that says that that distinction is supported by the law. There is no case that says that. When Mr. Elwood suggests that the other states have followed that distinction, that's simply not the case. It hasn't been addressed. So I would ask respectfully that you remand this case for further proceedings and I thank you very much for your time today. Thank you. We'll take the matter under advisement and wait for readiness in the next case.